## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHNATHAN JOSEPH LORD,** | : | **Civil No.  1:24-CV-1943** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

This case calls to mind a basic tenet of Social Security case law.  In this field, it is axiomatic that "when evaluating medical opinions 'the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.'" Mercado v. Kijakazi, 629 F. Supp. 3d 260, 281 (M.D. Pa. 2022) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)).

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

This familiar legal principle is presented in the context of a recurring scenario and persistent error which Courts have identified relating to analysis of emotional impairments. Oftentimes when assessing a claimant's mental limitations Administrative Law Judges (ALJs) are called upon to consider opinions by state agency experts which may use a legal term of art in a casual fashion. Specifically, these state agency experts may indicate that a claimant's mental impairments were not totally disabling but then state that the claimant could understand "one-to-two-step tasks." These opinions carry a potential for confusion and ambiguity because the experts' references to one-to-two-step tasks involve a term of art in Social Security practice which connotes jobs limited to reasoning level 1 since the definition of this reasoning level is confined to jobs which entail: "Apply[ing] commonsense understanding to carry out simple one- or two-step instructions." Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702. Thus, state agency experts' opinions that a claimant could perform one- and two-step tasks may be tantamount to a finding that the claimant was extremely limited in meeting the mental demands of the workplace and could only perform the most rudimentary of tasks, reasoning level 1 jobs.

2

When state agency experts use this term of art they create a dilemma for ALJs. While the ALJ may choose which medical opinions are persuasive, "[f]or each limitation opined necessary by a persuasive medical source, the ALJ is obligated to either: (1) incorporate that limitation in the claimant's RFC, or (2) explain the basis for discounting that limitation. Such an obligation ensures that any omission was intentional and supported by substantial evidence in the record." Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025) (citing Steinmetz v. Colvin, Civ. No. 23-CV-2066, 2025 WL 36159, *7 (M.D. Pa. Jan. 6, 2025); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). Therefore, "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Id. at *8. Applying these legal benchmarks, courts have frequently held that the complete and unexplained failure of an ALJ to address, acknowledge or incorporate a one-to-two-

3

step task limitation set forth in a persuasive medical opinion constitutes error which may compel remand.[2]

Thus, we have found that discounting a one-to-two-step limitation in a persuasive medical opinion for *no reason* constitutes error. The instant case presents us with another permutation on this theme: What course should we follow if an ALJ discounts a one-to-two-step limitation in an otherwise persuasive medical opinion for *the wrong reason*? As discussed below, we conclude—consistent with settled caselaw—that rejecting such a limitation for the wrong reason also compels a remand.

---

[2] See e.g., ADRIENNE LOMBARDO, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:24-CV-56, 2026 WL 674198, at *1 (M.D. Pa. Mar. 10, 2026); SARAH C., Plaintiff, v. FRANK BISIGNANO, Defendant., No. 1:23-CV-01828, 2026 WL 625094, at *1 (M.D. Pa. Mar. 5, 2026); FRED MCCLEARY, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:25-CV-26, 2026 WL 625113, at *1 (M.D. Pa. Mar. 5, 2026); Delillo v. Bisignano, No. 4:25-CV-523, 2026 WL 592389, at *1 (M.D. Pa. Mar. 3, 2026); Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026); Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6 (M.D. Pa. Apr. 22, 2025); Shipman v. Kijakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

In this case a state agency expert opined that Lord could perform one-to-two-step tasks. In the decision denying this application for benefits, the ALJ generally found this opinion persuasive. The ALJ then expressly addressed the one-to-two-step task aspect of the expert's opinion, and rejected it, but did so for the wrong reasons, finding that this term—which is quite precise—was "vague" and holding that this language—which was derived from the Commissioner's own vocational regulations—did not "utilize vocational terminology." (Tr. 24). As discussed below, because it is clear that "when evaluating medical opinions 'the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason'" Mercado, 629 F. Supp. 3d at 281, the ALJ's reliance on the wrong reasons to discount this opinion now calls for a remand in this case.

## II.     Statement of Facts and of the Case

### A. Introduction

On January 11, 2022, Johnathan Joseph Lord filed an application for supplemental security income benefits, alleging an onset of disability beginning February 1, 2020. (Tr. 17). In this application Lord alleged that he was disabled due to the following severe emotional impairments: anxiety disorder, substance use disorder, depressive disorder, and post-traumatic stress disorder. (Tr. 19).

5

Lord was born on October 4, 1979, and was 42 years old, at the time of his disability application, making him a younger worker under the Commissioner's regulations. (Tr. 26). He had a high school education and had prior employment as a galvanizer, and in the auto repair and construction fields. (Tr. 25-26).

### B. Medical Evidence of Lord's Mental Impairments

With respect to Lord's emotional impairments, as the ALJ observed:

> Prior to the relevant period, the record does show that the claimant had more significant mental health symptomology. However, these more significant symptoms appear to have been influenced by the claimant's substance abuse and medication noncompliance during this period. For instance, at an August 2016 hospitalization, the claimant reported that he was suicidal and noted that he had been actively abusing heroin and cocaine, which had worsened his mood (Exhibit 1F/3). Similarly, at a September 2019 visit at Baltimore Crisis Response, Inc, the claimant noted that he was experiencing significant symptoms following a recent opioid relapse.

(Tr. 24).

In fact, Lord's treatment records spanning from 2019 through 2022 document significant ongoing emotional impairments. According to these treatment notes, Lord reported two or three suicide attempts during this time, including an attempted drug overdose suicide in May of 2019. (Tr. 395, 513, 688). Lord also described as many as five prior psychiatric hospitalizations. (Tr. 516, 676, 687).

6

Between 2019 and 2021, Lord received counseling and treatment for his mental health through the Time Organization. (Tr. 365-502, 527-609). From 2019 through June 2020, progress notes from this health care provider consistently stated that "Mr. Lord's psychotic symptoms ha[ve] been identified as an active problem in need of treatment" and observed that these symptoms primarily manifested themselves through auditory hallucinations.[3] Subsequent progress notes described Lord's judgment, insight and memory as fair, but continued to identify auditory hallucinations as an ongoing concern. (Tr. 527-591).

C. **Medical Opinion Evidence**

Given this clinical history, three sources opined regarding the gravity of Lord's emotional impairments. First, a consulting examining source, Dr. Rick Parente, assessed Lord twice, in December 2020 and November 2022. (Tr. 510-521, 671-680). In these evaluations, Dr. Parente noted Lord's multiple psychiatric hospitalizations, (Tr. 516, 676), and found that testing revealed below average cognitive performance. (Tr. 518, 677). Dr. Parente also concluded that Lord's attention, concentration and memory were limited. (Tr. 513, 517, 676). Given these

---

[3] Tr. 365, 368, 372, 378, 386, 388, 417, 428, 432, 472, 482, 487, 495, 499, 502, 609.

noticeable problems with concentration and attention, the doctor found that Lord could follow simple instructions but struggled with more complex instructions. (Tr. 514, 674, 678).

In addition, two non-treating, non-examining state agency sources assessed the severity of Lord's mental impairments. A December 2022, initial assessment by Dr. Joseph Leizer found that Lord was moderately limited in a number of spheres of workplace functioning, including interacting with others, concentration, understanding detailed instructions, and adapting to change in the job site. (Tr. 66). According to Dr. Leizer, Lord was: "Able to concentrate and persist at simple job duties, maintain attendance, work without special assistance, interact with others without being distracted by them, make simple work-related decisions and meet simple production requirements." (Tr. 68). Six months later, in June of 2023, a second state agency expert, Dr. John Gavazzi, reached a more restrictive opinion regarding Lord's mental limitations, finding that: "The claimant can make simple decisions. The claimant would be able to maintain regular attendance and be punctual. *The claimant can carry out very short and simple instructions. The claimant can perform one- and two-step tasks*." (Tr. 78) (emphasis added). Dr. Gavazzi's findings were significant since, under the Dictionary of Occupational

Titles, the ability to perform one-to-two-step tasks confines a worker to reasoning level 1 jobs, the most severe restriction on workplace reasoning. See Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702. Therefore, the one-to-two-step functional capacity found by this state agency expert implied a very high degree of mental impairment.

### D. The ALJ Hearing and Decision

It was against this medical backdrop that Lord's disability claim came to be heard by the ALJ on January 23, 2024, at which Lord and a Vocational Expert (VE) testified. (Tr. 32-61). In his testimony, Lord explained that he experienced insomnia, panic attacks, night terrors, difficulty concentrating, and occasional auditory hallucinations. (Tr. 45-50). The VE, in turn, testified that Lord could perform a number of jobs which entailed a reasoning level of 2, reasoning levels which exceeded the one-to-two-step limitations opined by Dr. Gavazzi. (Tr. 50-57).

Following this hearing, on May 10, 2024, the ALJ issued a decision denying Lord's application for benefits. (Tr. 14-27). In that decision, the ALJ first concluded that the plaintiff had not engaged in substantial gainful activity since January 11, 2022, the application date. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Lord had the following severe

impairments: anxiety disorder, substance use disorder, depressive disorder, and post-

traumatic stress disorder (PTSD). (Id.) At Step 3, the ALJ found that Lord was

moderately impaired in terms of interacting with others, concentrating, persistence

and pace, but determined that these impairments did not meet or medically equal the

severity of any listed impairments. (Tr. 20-22).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity

("RFC"), considering the plaintiff's limitations from his impairments, stating that:

> After careful consideration of the entire record, I find that the claimant
> has the residual functional capacity to perform a full range of work at
> all exertional levels but with the following nonexertional limitations:
> the claimant is able to understand and remember simple tasks. He can
> maintain attention, concentration, and pace for simple tasks in two-hour
> periods. The claimant cannot have public contact. The claimant can
> tolerate occasional changes to the job routine so long as an explanation
> is provided. The claimant is able to perform work that does not require
> a fast production pace (e.g., assembly line on a conveyor belt). The
> claimant can make simple, work-related decisions. The claimant can
> tolerate occasional coworker and supervisory contact other than periods
> of instruction (periods of instruction being the initial training and
> explanation of changes to job routine or tasks).

(Tr. 22).

Notably, this RFC did not contain the one-to-two-step limitations

recommended by Dr. Gavazzi, a state agency expert whose opinion the ALJ found

10

to be generally persuasive. In reaching this result, the ALJ reconciled the refusal to include this limitation in Lord's RFC by stating:

> At the initial and reconsideration stages of the administrative process, the psychological consultants who reviewed the file, Joseph Leizer, PhD, and John David Gavazzi, PsyD, opined that the claimant retained the ability to perform simple work, interact with others in the workplace, maintain attention, and adapt to single, infrequent changes (Exhibits 2A and 4A). *I find that these opinions continue to be generally persuasive other than vague language that does not utilize vocational terminology, such as very short, one and two step tasks, and struggles with social skills.*

(Tr. 24) (emphasis added).

Having discounted the one-to-two-step limitation found by Dr. Gavazzi as "vague" and not grounded in "vocational terminology" ALJ then concluded that Lord could both return to his past work and could perform other work in the national economy. (Tr. 25-27). All of these jobs were reasoning level 2 tasks that exceeded the one-to-two-step task mental limitations found by Dr. Gavazzi.[4] The ALJ then

---

[4] 381.687-018 Cleaner, Industrial, DICOT 381.687-018; 869.687-026 Construction Worker II, DICOT 869.687-026; 922.687-058 Laborer, Stores, DICOT 922.687-058; 209.587-034 Marker, DICOT 209.587-034; 807.687-010 Automobile-body-repairer Helper, DICOT 807.687-010; 503.685-030 Metal-cleaner, Immersion, DICOT 503.685-030.

determined that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Lord contends, *inter alia*, that the ALJ's mental RFC evaluation was flawed. After a review of the evidence, we agree that the ALJ's opinion rejected Dr. Gavazzi's one-to-two-step mental limitation for what were clearly the wrong reasons. The ALJ discounted this aspect of the doctor's opinion finding that it was vague and did not utilize vocational terminology. Both of these proffered grounds for rejecting this opinion are wrong. Since it is clear that "when evaluating medical opinions 'the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason'" Mercado, 629 F. Supp. 3d at 281, we will remand this case for further consideration by the Commissioner.

## III.    **Discussion**

### A. **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012).

12

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-

evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

14

matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

15

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate'

16

difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931

F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ

offers a valid explanation a mental RFC when the ALJ highlights factors such as

"mental status examinations and reports that revealed that [the claimant] could

function effectively; opinion evidence showing that [the claimant] could do simple

work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc.

Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In

formulating a mental RFC the ALJ does not need to rely upon any particular form

of words. Further, the adequacy of the mental RFC is not gauged in the abstract.

Instead, the evaluation of a claimant's ability to undertake the mental demands of

the workplace will be viewed in the factual context of the case, and a mental RFC is

sufficient if it is supported by a valid explanation grounded in the evidence.

### B. **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a

claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a

17

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able

to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r

of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.

§§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of

the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R.

§404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that

determination entails an assessment of what work the claimant can do given the

physical limitations that the claimant experiences. Yet, when considering the role

and necessity of medical opinion evidence in making this determination, courts have

followed several different paths. Some courts emphasize the importance of medical

opinion support for an RFC determination and have suggested that "[r]arely can a

decision be made regarding a claimant's residual functional capacity without an

assessment from a physician regarding the functional abilities of the claimant."

Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa.

Mar. 4, 2013)). In other instances, it has been held that: "There is no legal

requirement that a physician have made the particular findings that an ALJ adopts

19

in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic

20

view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

21

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with

22

treating sources at the apex of this hierarchy. However, in March of 2017, the

Commissioner's regulations governing medical opinions changed in a number of

fundamental ways. The range of opinions that ALJs were enjoined to consider were

broadened substantially, and the approach to evaluating opinions was changed from

a hierarchical form of review to a more holistic analysis. As one court as aptly

observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

23

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

When presented with a disputed factual record, it is well-established that "[t]he ALJ

– not treating or examining physicians or State agency consultants – must make the

ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667

24

F.3d 356, 361 (3d Cir. 2011). However, the ALJ must still fully articulate the basis of this medical opinion evaluation. Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). It also follows that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8.

These legal benchmarks guide us in the instant case.

### D. **This Case Will Be Remanded.**

After a review of the record, we conclude that the ALJ's reliance upon a faulty rationale to discount Dr. Gavazzi's opinion that limited Lord to one- and two-step tasks was error. At the outset, in reviewing this ALJ's decision we find ourselves at the intersection between two well-settled paradigms in the Social Security field. First, our highly deferential standard of review empowers "[t]he ALJ – not treating or examining physicians or State agency consultants – [to] make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Thus, our decision

25

in this case in no way undercuts the legal tenet that an ALJ is not required to adopt every limitation opined by the experts but "can formulate an RFC based on different parts from the different medical opinions." Durden, 191 F.Supp.3d at 455. However, at base, an ALJ must draft a reviewable opinion that is grounded in the evidence and provides the court with an adequately articulated rationale for the limitations adopted. An essential element of this duty of articulation is the familiar proposition that "when evaluating medical opinions 'the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.'" Mercado v. Kijakazi, 629 F. Supp. 3d 260, 281 (M.D. Pa. 2022) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)).

We have applied these legal mandates in the context of the ALJ's assessment of medical opinion evidence limiting a claimant to one-to-two-step tasks. Indeed, this Court, and others, have specifically concluded that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8. See also Rita R. v. Kijakazi, No. 21 C 5631, 2023 WL 2403139, at *3–4 (N.D. Ill. Mar. 8,

2023) ("Indeed, an ALJ is required to provide a thorough and appropriate explanation for rejecting a state agency psychologist's opinion that a claimant is limited to one-to-two step tasks."). Therefore, when an ALJ's decision neither includes a one-to-two-step limitation set forth in a persuasive medical opinion, nor explains why it was not incorporated into the RFC, we have held that a remand is necessary.[5] Thus, it is clear that discounting a one-to-two-step limitation in a persuasive medical opinion for *no reason* is error. The instant case presents us with a closely related question: Is it also error for an ALJ to discount a one-to-two-step limitation in an otherwise persuasive medical opinion for *the wrong reason*? We

---

[5]See e.g., ADRIENNE LOMBARDO, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:24-CV-56, 2026 WL 674198, at *1 (M.D. Pa. Mar. 10, 2026); SARAH C., Plaintiff, v. FRANK BISIGNANO, Defendant., No. 1:23-CV-01828, 2026 WL 625094, at *1 (M.D. Pa. Mar. 5, 2026); FRED MCCLEARY, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:25-CV-26, 2026 WL 625113, at *1 (M.D. Pa. Mar. 5, 2026); Delillo v. Bisignano, No. 4:25-CV-523, 2026 WL 592389, at *1 (M.D. Pa. Mar. 3, 2026); Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026); Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6 (M.D. Pa. Apr. 22, 2025); Shipman v. Kijakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

conclude that rejecting this aspect of a medical opinion for the wrong reason is also error and compels remand.

On this score, we note that the ALJ's stated rationale for discounting the one-to-two-step limitation recommended by Dr. Gavazzi was fundamentally flawed in at least two ways. The ALJ justified the decision in this case by stating that:

> At the initial and reconsideration stages of the administrative process, the psychological consultants who reviewed the file, Joseph Leizer, PhD, and John David Gavazzi, PsyD, opined that the claimant retained the ability to perform simple work, interact with others in the workplace, maintain attention, and adapt to single, infrequent changes (Exhibits 2A and 4A). *I find that these opinions continue to be generally persuasive other than vague language that does not utilize vocational terminology, such as very short, one and two step tasks, and struggles with social skills.*

(Tr. 24) (emphasis added).

Thus, the ALJ's decision to discount this one-to-two-step task restriction rested one two pillars: The ALJ found this term was both "vague" and did not use "vocational terminology."

Both of these justifications are wrong.

At the outset, a limitation to one-to-two step tasks simply is not vague. In fact, it is the opposite of vague; it is highly specific and precise. Indeed, we note that, while the ALJ rejected this limitation as vague, the RFC which the ALJ fashioned

was actually less precise than that proposed by Dr. Gavazzi. This rationale therefore fails.

Likewise, the ALJ's claim that Dr. Gavazzi's proposed one-to-two-step limitation did not utilize vocational terminology ignores an immutable fact. The term "one-to-two step tasks" is a definitional term used in the Department of Labor Dictionary of Occupational Titles, the vocational Bible relied upon by ALJs in virtually all Social Security cases. This plainly vocational term describes jobs limited to reasoning level 1 since the definition of this reasoning level is confined to jobs which entail: "Apply[ing] commonsense understanding to carry out simple *one- or two-step instructions*." Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (emphasis added). Thus, the one-to-two-step limitation described by Dr. Gavazzi is firmly rooted in vocational terminology, and the ALJ erred in failing to recognize this fact.

This error—the ALJ's reliance on the wrong reasons to discount this one-to-two-step limitation—is not harmless here since the ALJ's conclusion that Lord was not disabled is based upon his ability to perform work in occupations requiring a reasoning level of 2, a reasoning level that was inconsistent with a limitation to one-to two-step tasks. As this Court has previously explained:

29

> The DOT defines occupations by reasoning level and defines "reasoning level one" as the ability to "apply commonsense understanding to carry out *simple one-or two-step instructions.*" The similarity of that language to "one- and two-step tasks," leads us to conclude that an individual limited to "one-and two-step tasks" is likewise limited to "reasoning level one" occupations. Importantly, this limitation *is* dischargeable: an ALJ may find otherwise, so long as they rely on and cite to substantial evidence that adequately explains why they are omitting the limitation in the claimant's RFC despite having found the relevant medical opinion to be persuasive.
>
> Additionally, courts in eight of the eleven circuits where a District court has considered this issue have held that "simple repetitive tasks" and "one- and two-step tasks" are legally distinct limitations. And all but one of these cases also found that a limitation to "one- and two-step tasks" necessarily limits the claimant to reasoning level one occupations.

Cruz, 2025 WL 2813882, at *7. See also Rita R., 2023 WL 2403139, at *3–4 ("The ALJ's error is of crucial importance because a limitation to 'simple tasks' (the RFC limitation the ALJ found here) encompasses jobs that may involve complexity beyond one-to-two step tasks"); Daniel M. v. Kijakazi, No. 2:21-CV-243, 2023 WL 154909, at *3 (D. Vt. Jan. 11, 2023) (collecting cases) (concluding reasoning Levels 2 and 3 are not consistent with "simple, one-to-two step tasks").

While in certain circumstances this error may be harmless, we cannot find the error harmless on the facts of the instant case for at least two reasons. First, at bottom, to sustain this decision we would necessarily have to reweigh the evidence  since the

30

ALJ discounted this medical opinion for the wrong reasons. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). In addition, we would have to substitute a different rationale for the ALJ's decision given that the ALJ rejected the one-to-two-step task aspect of the expert's opinion for the wrong reasons, finding that this term—which is quite precise—was "vague" and holding that this language—which was derived from the Commissioner's own vocational regulations—did not "utilize vocational terminology." We cannot follow this course and essentially re-write the rationale for this decision since it is well-settled that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision; [we] may not offer a post-hoc rationalization." Schuster v. Astrue, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (citations omitted).

31

Simply put, more was needed here by way of explanation on the ALJ's part. Since the ALJ's burden of articulation is not met in the instant case, this matter will be remanded for further consideration by the Commissioner. Yet, while we find that these errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ. Moreover, because we have vacated and remanded the decision of the Commissioner on these grounds, we decline to address any other issues presented by the parties since "[a] remand may produce different results on these claims, making discussion of them moot." Burns v. Colvin, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016).

Finally, we close as we began, by observing that one root cause of this remand is an issue which courts have repeatedly observed, the apparent failure of legal and medical professionals to attach a common meaning to the words they use. Thus, we note for the Commissioner that the casual conflation of one-to-two-step RFCs in medical opinions with widely varying assessments of the claimant's degree of impairment, if unaddressed, will continue to compel remands in the future.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: April 20, 2026